IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| COSHOCTON GRAIN COMPANY, | |
| Plaintiff, | Case No. 2:14-cv-2182 |
| vs. | Judge Gregory L. Frost |
| CALDWELL-BAKER COMPANY, | |
| Defendant. | |

## Caldwell-Baker Company's Motion and Memorandum of Law in Support of Its Motion to Dismiss and for Change of Venue

Comes Now Caldwell-Baker Company (CBC), and for its Motion and Memorandum in Support of Its Motion to Dismiss and for Change of Venue state the following:

**Procedure**

On November 10, 2014, this Court contacted Grant Baker of Caldwell-Baker Company by telephone indicating that a lawsuit had been filed in this Court. The Court sought to telephone conference with Mr. Baker and his counsel.  The Court called back that day and conferenced with Mr. Baker and his counsel.  The Court indicated that Local Rule 65.1 required a preliminary conference prior to the Court ruling upon a temporary restraining order or preliminary injunction.  The procedure has placed counsel for CBC in a bit of a quandary as counsel does appreciate the policy and intent of the Local Rule in ensuring fairness prior to issuing such an order while at the same time the procedure forces counsel into this lawsuit prior to CBC being served and joined as a party.  Further, counsel for CBC cites *Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011) for the proposition that CBC is not waiving jurisdiction and that its conduct in this case does not constitute legal submission to the jurisdiction of this Court. Id.  at 519.  There should be no reasonable expectation that CBC

1

will defend the case on the merits in this venue.  CBC does not seek to cause this Court to go to any wasted effort prior to the venue/personal jurisdiction issue. Because service has not been effectuated upon CBC counsel for CBC is also presented with a bit of a Hobson's choice insofar as seeking to inform the Court as to the impropriety of the suit being filed in Ohio via this motion prior to legal service upon CBC. Despite all of this, and with the express statement that CBC does not waive any of its defenses, enters a limited appearance only to respond to the Court's Order (Doc. 3) providing CBC time to file a motion on forum selection going to this Court's authority and jurisdiction.  Because the Court has ordered that CBC may not file a reply, the motion is a bit longer due to anticipating counter-arguments that Coshocton may make.

## Preliminary Statement

CBC provided notice to Coshocton that cars would be sent to shops for Rule 88 Extended Life work.  CBC is specifically entitled to remove railcars to conduct Rule 88 work under (Doc. 1.1.) paragraph (c) of Section 10:

> (c) **Substitution of Car.** Lessor or Lessee may at its expense replace any Car that has been damaged beyond the Stipulated Value of said Car with equipment of similar age, type and capacity upon prior written notice to each other. Lessor may also, at its expense and upon prior written notice to Lessee, replace any Car that Lessor determines is uneconomical for Lessor to repair or maintain with equipment of similar age, type, and capacity. Notwithstanding anything herein to the contrary, Lessor may, for any reason whatsoever upon written notice to Lessee, replace and substitute any Car with a railcar of similar age, type and capacity and Lessee and Lessor shall execute new Schedules covering such new railcars and subjecting them to the terms of this Lease. Any car so substituted shall be subject to the terms and conditions of this leasing including, but not limited to, the acceptance conditions.  If certain cars are sent to contract shops for Rule 88 Extended Life, such cars will not be substituted for unless Lessor has available cars to substitute. The provision of 5(a) will apply as to rent abatement. Instead, cars will move back to Lessee at Lessor's expense.

CBC clearly has the right to remove <u>any</u> cars meeting any of the criteria above.

2

Coshocton claims CBC cannot remove any cars which is not supported by any reasonable interpretation of the Lease. Even though Coshocton has not claimed it, a claim for breach of good faith must be supported by an underlying breach. There is no obligation for CBC to refrain from sending cars to shop for Rule 88 work when it has no corresponding obligation to substitute those cars and "such an obligation cannot be created through application of the implied covenant." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.,* 443 F.3d 1240, 1244 (10th Cir. 2006). It cannot prevail on this claim. It specifically states "Lessor, may for any reason whatsoever...." Moreover, cars needing Rule 88 work <u>can be sent to contract shops</u> and not substituted. Coshocton has and is repudiating its obligations under the Lease and denying CBC its contract rights. Even now Coshocton has breached the Lease by refusing to honor its promise to bring claims in the state of Kansas rather than Ohio. So Coshocton claims in various ways and theories the same thing – that CBC cannot send cars to a shop because it will deprive it of a railcar. But the Lease specifically provides CBC this unqualified right to do so – and without providing a replacement car – when the cars are sent to shop for Rule 88 work. Coshocton agreed to this. It cannot suffer any harm – much less irreparable harm – when the other party exercises its contract rights. "A party to a contract cannot commit a breach by exercising a contract right." *Concrete Specialties v. H.C. Smith Construction Co.,* 423 F.2d 670, 672 (10th Cir.1970).

      Coshocton's claim of irreparable harm is also without factual and legal basis. Coshocton claims it will suffer irreparable harm if railcars are sent to shops for Rule 88 work. Coshocton doesn't even claim it will not have railcars. Instead, it claims that it will "have to attempt to lease replacement railcars at a substantially higher price" and that "this option is only viable if similarly-situated cars capable of handling proper quantities of grain

are available on the market during the harvest season.  Plaintiff's TRO Memorandum, p. 3.  Coshocton doesn't claim in its bare allegations that it can't obtain other similar railcars – only that it *might* have to pay more for railcars.  The affidavit of the CEO doesn't allege this.  Thus, the most that Coshocton claims is rank speculation about obtaining other railcars. "The harm alleged must be both certain and immediate, rather than speculative or theoretical." *Michigan Coalition of Radioactive Material Users, Inc., v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).  "It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  All that Coshocton claims is possible problems in locating railcars at a higher cost which would fully compensate Coshocton without the aid of an injunction. Id. Further, the Coshocton elevator is served by a short line railroad.  This <u>railroad is required to provide railcars to Coshocton</u> if Coshocton does not have its own.  Coshocton can order empty railcars from this short line railroad.  Thus Coshocton's claim of irreparable harm based on speculation that it might not obtain railcars is not sufficient.

     When CBC exercised its right to have the railcars directed to a Kansas City shop by giving the railroad a bill of lading so directing, Coshocton improperly interfered by having a person from Archer Daniels Midland redirect the railcars without CBC's permission.  CBC now has been unable to fulfill its understandings with shops that have room and time to perform this work. CBC has been denied its rights under the Lease. Coshocton has breached the Lease by bringing suit in Ohio in contravention of the forum selection provision it agreed to in the Lease. CBC has placed Coshocton on notice of these breaches and is placing Coshocton on further written notice in this motion and its obligation to now pay lease rates in the amounts provided for in the holdover provision of the Lease.

**Motion to Dismiss for Lack of Personal Jurisdiction**

Coshocton engaged in forum shopping. When a valid forum-selection clause exists and a diversity action is filed in a different forum, the original venue's choice-of-law rules do not apply. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,* 134 S. Ct, 568, 582-83 (2013). The plaintiffs seek to have the Court enter a TRO but CBC has not even been served. See *Midmark Corporation v. Janak Healthcare Private Limited*, Case No. 3:14-CV-88 (SD Ohio March 19, 2014) ("As local counsel has yet to make an appearance for Respondents, the Court questioned Petitioners concerning the question of personal jurisdiction.") A plaintiff has the *prima facie* burden of showing that personal jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). CBC's principal office is Gardner, Kansas. The complaint merely alleges diversity jurisdiction but wholly failed to plead any facts which support *in personam* or personal jurisdiction over the Defendant CBC. The complaint contends that a contract was entered into. That does not implicate Ohio. The Lease itself states that Kansas law applies and that venue was only in the state of Kansas. The plaintiff has failed to show that the CBC has committed or directed any act in Ohio which would confer personal jurisdiction over it. The plaintiff has failed to allege any basis for this Court to have jurisdiction in this case.

**Motion to Transfer pursuant to 28 U.S.C. § 1404(a)**
**Forum Selection Clause in the Lease**

In a typical case involving a motion to dismiss for *forum non conveniens*, the court must evaluate both the convenience of the parties and various public-interest considerations. *Atlantic Marine Construction Co., Inc. v. J-Crew Management, Inc.,* 133 S. Ct. 568, 581 (2013). However, the calculus changes when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper

5

forum." Id at 581. Thus the traditional analysis under 28 U.S.C. § 1404 (a) is modified three ways. First, the plaintiff's choice of forum receives no weight. Second, the Court should not consider the parties' private interests because, when there is a forum-selection clause, the private-interest factors have been predetermined by contract to weigh entirely in favor of the preselected forum. Although a court may still consider the public-interest factors, those factors will rarely defeat a valid forum-selection clause. Third, a Section 1404(a) transfer motion will be governed by the choice-of-law rules of the preselected forum. Id.

*Atlantic* held "when the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine*, 134 S. Ct. at 581.[1] "Because those [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id. "A forum-selection clause may be enforced by a motion to transfer under §1404(a)." *Atlantic Marine*, 134 S.Ct. at 575. The forum selection clause in the Lease (Doc 1.1) is mandatory and states on page 13, Section 18, paragraph (i) the following:

> (i)  Applicable Law. The terms of this Lease and all rights and obligations hereunder shall be governed by the laws and venue of the State of Kansas without regard to Kansas' choice of law doctrine. There are words and phrases herein that are railroad terminology defined by the *Car and Locomotive Cyclopedia* (1997) dictionary published by Simmons-Boardman.

The parties specifically agreed that "all rights and obligations hereunder shall be governed by the laws and venue of the State of Kansas without regard to Kansas' choice of law doctrine." "Shall be" is mandatory. "All rights and obligations hereunder" encompasses

---

[1] In anticipation that Coshocton would somehow allege that the parties had unequal bargaining power, in *Mann v. Automobile Protection Corp.,* 777 F.Supp.2d 1234, 1240-41 (D.N.M. 2011) several cases were surveyed in support of the holding that such factors as unequal bargaining position and form contracts did not invalidate a forum-selection provision.

all of the plaintiffs' claims — all rights and all obligations whether they sound in contract or tort.[2] The clause is not even limited to claims that are dependent upon the agreement or to those that allege breach of the agreement. Rather, it encompasses "all rights and obligations hereunder." Coshocton's interference claim clearly encompass "all rights and obligations" as it alleged activities that may or may not be covered by the terms of the Lease agreement and indeed, it will certainly fail if CBC's sending of cars to contract shops for Rule 88 work is found to be within the scope of the agreement. The clause specifically binds each to the substantive laws of Kansas and exempts the parties from any Kansas choice of law doctrine which might apply – even to the commission of torts. Thus any tort is governed by Kansas substantive law. Bottom line is this: the relationship of the parties is contractual. The tortious interference claim is not independent of the Lease rights and obligations.

A Kansas federal court in *Teran v. GB Intern., S.P.A.,* 920 F.Supp.2d 1176 (D. Kan. 2013) recently construed a forum selection clause that recited in part as follows:

> Governing Law and Consent to Jurisdiction. (a) This Agreement shall be governed by and construed in accordance with the internal substantive laws and not the choice of law rules of the State of Kansas.
>  (b) Any and all disputes with respect to this Agreement must be brought in the form of a judicial proceeding in the District Court of Wyandotte County, Kansas, or in the United States District Court sitting in Kansas City, Kansas,…
> Id. at 1182.

---

[2] Under Kansas law, the tort is "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct." *Turner v. Halliburton Co.,* 240 Kan. 1, 12, 722 P.2d 1106 (1986). The claim intertwines the Lease as it recites "intentional misconduct." CBC did not do anything wrong by exercising a contract right. The tort clearly involves the same operative facts as the breach of contract – the exercise CBC's contract rights to have cars sent to contract shops for Rule 88 work. The tort cannot be determined without making a simultaneous determination as to the rights and obligations under the Lease.

The *Teran* court then held it encompassed tort claims:

> Plaintiff's tort claims, which he brings in his individual capacity directly against Defendants, are related to his contract and declaratory judgment claims because they involve the same operative facts and will require the fact-finder to determine the terms of the Shareholders Agreement and whether Defendants complied with those terms, and whether Defendants, as majority shareholders, manipulated or interfered with that Agreement to the detriment of ACTP and Plaintiff. The broad language of the forum selection provision covers "any and all disputes with respect to this Agreement," further supporting the conclusion that it is broad enough to include Plaintiff's tort claims against Defendants….
> Id. at 1184.

The United States Supreme Court has applied a forum selection provision in a case involving tort claims. See *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588 (1991). *See also Scherk v. Alberto-Culver Co.,* 417 U.S. 506 (1974) (fraud claim arising out of agreement to purchase certain business enterprises falls within arbitration clause governed by Illinois law). A contract forum selection clause has been found to apply to torts in *Stewart Org., Inc. v. Ricoh Corp.,* 810 F.2d 1066, 1070 (11thCir.1987)(construing "over any case or controversy arising under or in connection with this Agreement" as encompassing both contract and tort claims). The reasoning is where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause, despite the "pleading of alternative non-contractual theories of liability." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 203 (3d Cir.1983); *Lambert v. Kysar,* 983 F.2d 1110, 1121-22 (1st Cir.1993) (holding that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties"). See *Loveman v. Nusmile, Inc.,* No. CIV.A. 08C-08-223MJB, 2009 WL 847655, at *4 (Del. Super. Mar. 31, 2009) ("Authority from this and other jurisdictions provides that where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not

prevent enforcement of such a bargain.")

"When interpreting written contracts, the contract should not be interpreted by isolating one particular sentence or provision, but by construing and considering the entire contract. If the terms of the contract are clear, the parties' intent is determined from the contract itself without applying rules of construction." *Osterhaus v. Toth*, 249 P.3d 888, 896 (Kan. 2011). The fact that the Heading of paragraph (i) is "Applicable Law" does not eviscerate or change the meaning of "venue." The paragraph states "laws *and* venue." "Venue" means something and cannot be identical to "law." Venue is not a superfluous word. The word "venue" must be given effect. Venue must be given meaning. Venue was designated in the "State of Kansas." This Court ascertains the parties' intent from the four corners of the Lease construing "all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision." *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 671, 876 P.2d 1362 (1994).

A mandatory forum selection clause is enforced if it bears a reasonable relationship to the transaction under Kansas law. *See Aylward v. Dar Ran Furniture Industries, Inc.,* 32 Kan.App.2d 697, 700, 87 P.3d 341 (2004). This provision is a standard provision in CBC's leases and the exact language was a subject of recent litigation in Kansas federal court in *Caldwell-Baker Company v. Nebkota Railway, Inc.,* Case 2:13-cv-02391-RDR-KGS (D. Kan. September 30, 2013). *See* attached Order. The Order recites verbatim the exact forum selection paragraph in a different railcar lease. In that case the question of whether the forum selection clause limited the litigation to only a Kansas state court or could include a Kansas federal court. CBC contended that because the paragraph contained "governed by" in conjunction with the "State of Kansas" that this was an agreement to litigate only in Kansas

state court. Judge Richard D. Rogers analyzed this paragraph under Kansas and 10th Circuit law.[3] Judge Rogers ruled that venue under the identical clause was limited to either Kansas state or Kansas federal court. Judge Rogers ruled that the portion stating "governed by" was ambiguous: "At best, the language of the clause is ambiguous and fails to clearly indicate that federal venues within Kansas are excluded." The parties agreed to either a Kansas state or Kansas federal venue. This suit should not have been brought in this Ohio Court. The ruling and reasoning of Judge Rogers should be persuasive to this Court and this suit should now be transferred.

This Court's decision in *Professional Investigating & Consulting Agency, Inc., v. David Suzuki,* Case No. 2:11-cv-01025 (August 21, 2014) dealt with the defendant utilizing Rule 12(b)(2) and *Forum Non Conveniens* but not 28 U.S.C. § 1404(a). Its reasoning has application: "A forum selection clause in a commercial contract will be enforced absent a strong showing that it should be set aside." Id. at p. 3. "The parties to the Agreement are sophisticated commercial entities, the Forum Selection Clause is 'prima facie valid.'" Id. "Where the parties have entered into a valid forum selection clause, the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually-selected forum." Id. at p. 4. "In other words, valid forum-selection clauses should be upheld in almost all situations to protect the parties' legitimate expectations and

---

[3] In deciding whether an agreement exists and the terms of such an agreement, a federal court must apply state law. *M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.,* 843 F.Supp. 679 (D.Kan.1994). Choice of law is Kansas. Choice of law can be made by contracting parties. See *Equifax Servs. Inc. v. Hitz,* 905 F.2d 1355, 1360 (10th Cir.1990). When interpreting a forum-selection clause, courts construe a provision or provisions of a written contract to determine what meaning was intended and conveyed by the language the parties used. *Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 455, 827 P.2d 24 (1992). In *Milk `N' More, Inc. v. Beavert*, 963 F.2d 1342, 1345-46 (10th Cir.1992) the Tenth circuit construed the language "venue shall be proper under this agreement in Johnson County, Kansas" as constituting a mandatory forum selection clause only in Johnson County Kansas.

10

uphold the interests of justice." Id. The result in this case should follow *Atlantic Marine Construction Co., Inc. v. J-Crew Management, Inc.,* 133 S. Ct. 1748 (2013) and this Court should grant the Motion to Transfer.

**WHEREFORE** because a valid forum-selection clause exists which dictates that the case should be brought in a either a Kansas state or Kansas District Court, and because the case does not present exceptional circumstances, CBC respectfully requests this Court transfer this action pursuant to 28 U.S.C. § 1404(a) to Kansas Federal court in Kansas City, Kansas and for such other relief as this Court deems proper.

Respectfully Submitted,

By /s/ Linus L. Baker
Linus L. Baker  KS 18197 MO 44980
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:   913.486.3913
Fax:               913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the defendant CBC

Certificate of Service

The undersigned hereby certifies that this document was filed electronically on November 11, 2014, with the United States District Court for the Southern District of Ohio, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons.

/s/ Linus L. Baker

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CALDWELL-BAKER COMPANY,** )<br>          )<br>          Plaintiff,          )<br>          )<br>     v.          )<br>          )<br>**NEBKOTA RAILWAY, INC., et al.,**  )<br>          )<br>          Defendants.          ) | **Case No. 13-2391-RDR** |

**MEMORANDUM AND ORDER**

This action arises from the lease of certain rail cars by the defendants from the plaintiff. The case was originally filed in state court in the District Court of Johnson County, Kansas. The case was removed to this court by the defendants, alleging diversity of citizenship jurisdiction. Plaintiff then filed a motion to remand. This motion is presently before the court and the court is now prepared to rule.

I.

In the motion to remand, plaintiff contends that removal was improper due to the presence of a forum selection clause contained in the lease agreement. Based upon that clause, plaintiff asserts that venue is not proper in federal courts but only in the Kansas state courts. The forum selection clause reads as follows:

> (i) Applicable Law. The terms of this Lease and all rights and obligations hereunder shall be governed by the laws and venue of the State of Kansas without regard to Kansas' choice of laws doctrine. There are words and phrases herein that are railroad terminology defined by the Car and Locomotive Cyclopedia (1997) dictionary published by Simmons-Boardman.

Specifically, plaintiff suggests that the use of the language "be governed by" means that the parties intended for venue to be proper only in state court since Kansas law must govern the issue of venue.

The defendants have countered that the forum selection clause does not preclude removal to a federal district court in the state of Kansas. They contend that the phrase "venue of the State of Kansas" includes federal venues within the state of Kansas. They further argue, in the alternative, that the clause is "not grammatically or logistically sound, and, therefore, is ambiguous." Thus, because the forum selection clause was drafted by plaintiff, they contend that the clause should be construed against the plaintiff and interpreted to allow venue in Kansas federal courts.

## II.

A federal court exercising diversity jurisdiction determines the application of a forum selection clause under federal law. Black & Veatch Constr., Inc. v. ABB Power Generation, Inc., 123 F.Supp.2d 569, 577 (D.Kan.2000). Forum selection clauses are prima facie valid and courts should enforce them unless a party can show that enforcement would be unreasonable or unjust. Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). An enforceable forum selection clause must "clearly confine litigation to specific tribunals at the exclusion of all others." SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 582 (10th Cir. 1997). In addition, "[a] waiver of one's statutory right to remove a case from a state to a

federal court must be clear and unequivocal." Milk 'N' More v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992). Any ambiguity should be construed against the drafting party. Id.

A review of Kansas cases that have considered forum selection clauses similar to the one in this case are instructive. In Johnson v. N. States Power Co., 2000 WL 1683658 at *3 (D.Kan. Nov. 2, 2000), Judge Van Bebber considered a forum selection clause and determined that "appropriate courts of the State of Minnesota" included both state and federal courts. In reaching this conclusion, he relied upon the Tenth Circuit's decision in Milk 'N' More, which held that a waiver of a right to remove to federal court must be "clear and unequivocal." 2000 WL 1683658 at *3 (citing to Milk 'N' Money, 963 F.2d at 1346). He determined that because the phrase "appropriate courts of the State of Minnesota" did not "clearly and unequivocally" exclude federal courts, it did not preclude suit in the federal courts. Id.

In Paragon Ventures, LLC v. Mobile Med Care, Inc., 2005 WL 1398656 at *2 (D.Kan. June 14, 2005), Judge Vratil considered a forum selection clause providing that the "courts of the State of Kansas shall have exclusive jurisdiction and venue." Judge Vratil agreed with Judge Van Bebber's reasoning and held that the phrase "courts of the State of Kansas" did not "clearly and unequivocally" waive either party's right to proceed in federal court. 2005 WL 1398656 at *2. Thus, she held that venue was proper in the federal courts

3

of Kansas.  Id.

The court believes that the reasoning of Johnson and Paragon Ventures commands a similar result here.  The language of the forum selection clause does not "clearly and unequivocally" exclude federal courts.  The language in Johnson and Paragon Ventures permitted lawsuits to be brought in federal venues.  Similarly, the language here, "venue of the state of Kansas" includes federal venues within the state of Kansas.

The court is not persuaded that the "governed by" language contained the forum selection clause requires a different result as suggested by plaintiff.  At best, the language of the clause is ambiguous and fails to clearly indicate that federal venues within Kansas are excluded.  Any ambiguity should be resolved against the plaintiff because plaintiff drafted the lease.  In sum, the court finds that plaintiff's motion to remand must be denied.

**IT IS THEREFORE ORDERED** that plaintiff's motion to remand (Doc. # 6) be hereby denied.

**IT IS SO ORDERED.**

Dated this 30th day of September, 2013, at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge